IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DIRECTV, INC., a California
corporation,

      Plaintiff,

     v.

GARY WEIKEL, THOMAS
ROMANTINI, et al.,

      Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 03-5300 (JBS)

**OPINION**

APPEARANCES:

David Andrew Cohen, Esq.
SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, NJ 07102-5311
    Attorney for Plaintiff

Mr. Thomas Romantini
942 Ashburn Way
Swedesboro, NJ 08085
    Defendant pro se

**SIMANDLE**, District Judge:

    This matter comes before the Court upon Plaintiff DirecTV, Inc.'s motion to strike certain affirmative defenses of Defendant Thomas Romantini's Answer to its Complaint as well as upon Defendant Romantini's motion to dismiss and motion for summary judgment.  The principal issue presented in Defendant Romantini's dismissal motion is whether a private right of action exists under 18 U.S.C. § 2520(a) against a person who is alleged to have possessed an unauthorized electronic interception device contrary

to 18 U.S.C. § 2512(1)(b).  For the reasons discussed below, Plaintiff's motion to strike certain affirmative defenses will be granted.  In addition, this Court grants Defendant's motion to dismiss Count III of the Complaint and denies Defendant's motion for summary judgment.

## I.  BACKGROUND

Plaintiff DirecTV, Inc. ("DirecTV") is a California-based company in the business of distributing satellite television broadcasts throughout the United States.  (Compl. at ¶ 1.)  The programming is electronically scrambled by DirecTV and is transmitted from satellites to DirecTV subscribers who receive the signals through the use of DirecTV hardware including a small satellite dish, an integrated receiver, a DirecTV access card and cabling.  (Id. at ¶ 2.)  The DirecTV access card unscrambles the signals for those programs paid for by the subscriber.  (Id.)

A number of companies have engaged in the internet sale of illegal equipment designed to modify or circumvent DirecTV's signal-scrambling technology, including DSS-Pro.  With the assistance of law enforcement authorities, DirecTV obtained the business records and sales records of a shipping facility used by DSS-Pro, listing sales of illegal equipment to individuals, including many subscribers to DirecTV programming.  (Id. at ¶ 3.)  According to those records, Defendant purchased illegal equipment, including a "Boot Loader Board," and an "emulator"

which are designed for the theft of DirecTV's satellite television programming. (Id. at ¶ 8(a).)

In addition to purchasing and possessing these devices, DirecTV has also specifically alleged that Defendant Romantini directly and intentionally intercepted or endeavored to intercept, or procured other persons to intercept or endeavor to intercept DirecTV's satellite transmissions, or facilitated the unauthorized reception, decryption, and use of DirecTV's satellite television programming by persons not authorized to receive it. (Id. at ¶¶ 14-25.)

In November 2003, DirecTV filed a Complaint against Defendant Romantini for violations of the Communications Act of 1934, 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511 and 2512. In response to the Complaint, Defendant filed an Answer on December 8, 2003, which contains twenty-four (24) affirmative defenses.

Plaintiff DirecTV filed its motion to strike fifteen of Defendant Romantini's affirmative defenses on November 19, 2004. This motion is unopposed. Defendant Romantini filed his motion to dismiss Count III of Plaintiff's Complaint on November 8, 2004 and his motion for summary judgment on November 19, 2004, both of which are opposed.

## II.  **DISCUSSION**

A.   Motion to Strike Defendant's Affirmative Defenses

Plaintiff now seeks to strike fifteen (15) of Defendant Romantini's affirmative defenses, arguing they are clearly legally insufficient, redundant, immaterial and impertinent.

1.   Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party . . ., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

At least one court in this Circuit has separately defined the words referred to in the Rule.  Burke v. Mesta Mach. Co., 5 F.R.D. 134, 138 (W.D.Pa. 1946).

> "Redundant" – The statement of facts which are wholly foreign to the issue intended to be denied or the needless repetition of material averments.
>
> "Immaterial" – having no essential or important relationship to the averment intended to be denied.   A statement of unnecessary particulars in connection with, and as descriptive of, what is material.
>
> "Impertinent" – A statement of matters applied to facts which do not belong to the matter in question, and which is not necessary to the matter in question.

> "Scandalous" – Unnecessary matter or facts criminatory of a party referred to in the pleading.

Id.; see also Gateway Bottling, Inc. v. Dad's Rootbeer Co., 53 F.R.D. 585, 588 (W.D.Pa. 1971) (defining "impertinent" and "scandalous" as including those defenses that are invalid or not made in good faith and which do not fairly present questions of law or fact "which the court ought to hear").

"The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties," McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (internal citations omitted), or "if the allegations confuse the issues." Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002); see Ryer v. Harrisburg Kohl Brothers, Inc., 53 F.R.D. 404, 408 (M.D. Pa. 1971) ("[W]here there is no showing of prejudicial harm to the moving party the courts are not inclined to determine disputed and substantial questions of law in a motion to strike.") Furthermore, a court should not grant a motion to strike a defense unless the insufficiency of the defense is "clearly apparent from the pleadings." Ryer, 53 F.R.D. at 408; see Cipollone v. Ligget Group, Inc., 789 F.2d 181, 188 (3d Cir.

1986).  "The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where . . . the factual background for a case is largely undeveloped."  Cipollone, 789 F.2d at 188 (citations omitted). Indeed, "[a] motion to strike was never intended to furnish an opportunity for the determination of disputed and substantial questions of law . . . ."  Burke, 5 F.R.D. at 139.

    2.   Affirmative Defense No. 2 (Answer, ¶ 26)

Defendant's affirmative defense in paragraph twenty-six of his Answer states that "Plaintiff failed to include an indispensable party and this matter shall be dismissed with prejudice."  (Answer, ¶ 26.)  Defendant has never asserted who this alleged indispensable party is, having failed to do so through written discovery responses, his Answer, or any other pleading.  Moreover, at Defendant's deposition, when asked about this defense, Defendant stated that he did not recall to whom he was referring.  (Certification of David A. Cohen, Esq., Ex. B, Deposition of Thomas Romantini, 19:1-6.)  This defense must therefore be stricken.

    3.   Affirmative Defense No. 4 (Answer, ¶ 28)

In paragraph twenty-eight of his Answer, Defendant asserts that the "Plaintiff has requested damages, which are not authorized by law."  (Answer, ¶ 28.)  This Court, however, has previously held that 18 U.S.C. § 2520(c)(2) authorizes a civil

suit for claims arising under 18 U.S.C. § 2511 and that 47 U.S.C. § 605(a) permits civil recovery in a case such as this where DirecTV has alleged more than mere possession of the device. (DirecTV, Inc. v. Weikel, 03-CV-5300, April 29, 2004 Opinion at 12.)  Thus, Plaintiff may potentially recover civil damages under the statutes set forth in its Complaint and this affirmative defense must be stricken.

    4.   <u>Affirmative Defense No. 6 (Answer, ¶ 30)</u>

In paragraph thirty of his Answer, Defendant raises the following as his sixth affirmative defense: "Plaintiff's claims are barred by the Doctrines of Waiver and Estoppel."  (Answer, ¶ 30.)  "Waiver is the voluntary and intentional relinquishment of a known right."  <u>Knorr v. Smeal</u>, 836 A.2d 794, 798 (N.J. 2003). In order for a waiver to be effective, a party is required to have full knowledge of his legal rights and intent to surrender those rights.  <u>Id</u>.  "The party waiving a known right must do so clearly, unequivocally, and decisively."  <u>Id</u>.  Nothing in the pleadings or Romantini's discovery responses suggests that DirecTV intentionally elected to forgo its right to seek redress under the Communications Act and the Electronic Communications Privacy Act.  Thus, the doctrine of waiver is inapplicable here and this defense will be stricken.

Moreover, in order to establish a claim of equitable estoppel, a party must show that the adverse party, either

intentionally or under circumstances that induced reliance, engaged in conduct upon which he relied and that the relying party acted or changed his position to his detriment.  <u>Id</u>. at 799.  Defendant Romantini has never alleged that DirecTV induced him to change his position nor how any such change in position was to his detriment.  Moreover, when asked about this defense during his deposition, Defendant could not recall the factual basis for this defense.  (<u>See</u> Romantini Dep. 20:21-24.)  Thus, this affirmative defense must be stricken as legally insufficient.

     5.   <u>Affirmative Defense No. 7 (Answer, ¶ 31)</u>

    Defendant next alleges the defenses of laches and unclean hands as a bar to Plaintiff's claims in paragraph thirty-one of his Answer.  (Answer, ¶ 31.)  In order to state a claim for laches, a party must plead the following: (1) inexcusable delay in instituting suit, and (2) prejudice resulting to the defendant from the delay.  <u>Tonka v. Rose Art Industries, Inc.</u>, 836 F. Supp. 200, 219 (D.N.J. 1993).  The defense of laches is limited and "reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence."  <u>Id</u>. (quoting <u>Estate of Presley</u>, 513 F. Supp. 1339, 1351 (D.N.J. 1981)).  Defendant's Answer is wholly devoid of any allegations that DirecTV inexcusably delayed instituting suit.  More importantly,

Defendant has not alleged any resulting prejudice; there is absolutely no indication of any acquiescence by Plaintiff that induced Defendant to undertake substantial activities in reliance on that acquiescence.

Unclean hands is an expression of the equitable principal that a court should not grant relief to one who is a wrongdoer with respect to the subject matter of the suit. <u>Borough of Princeton v. Board of Chosen Freeholders of the County of Mercer</u>, 777 A.2d 19, 32 (N.J. 2001). "Delay in itself [of bringing suit], while perhaps an appropriate basis for rejecting a claim pursuant to the laches doctrine, does not establish 'unclean hands.'" <u>Id</u>. Here, even if Plaintiff could be said to have delayed in bringing suit, that alone does not sustain a defense of unclean hands. Moreover, Defendant lacks a factual basis for these defenses, as evidenced by his deposition testimony. (<u>See</u> Romantini Dep. 20:21-25 to 21:1-18.) Therefore, this Court will strike Defendant's seventh affirmative defense.

6.   <u>Affirmative Defense No. 8 (Answer, ¶ 32)</u>

In paragraph thirty-two of his Answer, Defendant states that "Defendant had no scienter and at all times operated in good faith." (Answer, ¶ 32.) This statement, however, does not amount to a defense, as defined by Rule 8(c) of the Federal Rules of Civil Procedure. DirecTV's Complaint does not allege that Defendant operated in bad faith; instead, it alleges statutory

violations of the Communications Act and the Electronic
Communications Privacy Act.  Moreover, at his deposition,
Defendant stated that he does not know the factual basis for this
defense.  (See Romantini Dep. 22:23-25 to 23:1-2.)  Thus, this
defense must be stricken as well.

      7.  Affirmative Defense No. 9 (Answer, ¶ 33)

      Defendant's ninth affirmative defense states that Defendant
"has historically purchased electronic devices for completely
legal purposes and the Plaintiff has no information or proof that
any device(s) was ever used nor intended for any illegal
purpose."  (Answer, ¶ 33.)  Defendant testified at his deposition
that he bought this device because he has purchased other devices
over the internet, such as a home theater system, which is a
legitimate purchase.  (Romantini Dep. 23:11-25 to 24:1-2.)
However, Defendant's purchase of a home theater system or other
legal electronic devices has no bearing on whether he legally
purchased the pirate access device alleged in the Complaint.
Moreover, despite Defendant's assertion that DirecTV has no
information or proof that any device was ever used or intended
for any illegal purpose, Defendant is alleged to have purchased a
pirate access device from a vendor who was dedicated to pirating
satellite television and that device allegedly has no legitimate
purpose.  Thus, this defense must be stricken as well.

8.   <u>Affirmative Defense No. 15 (Answer, ¶ 39)</u>

Defendant's fifteenth affirmative defense states "Plaintiff's Complaint fails to provide any substantial or credible evidence that the Defendant violated any law."  (Answer, ¶ 39.)  DirecTV, however, has produced a number of documents, evidencing Defendant's purchase of a pirate access device, including shipping records, which indicate that the device was shipped to Defendant's residence at 942 Ashburn Way, Swedesboro, New Jersey.  (Cohen Cert., ¶5; Ex. D.)  Moreover, Defendant admitted during his deposition that the billing, shipping and e-mail addresses associated with the purchase all belong to him.  (Romantini Dep. 8:1-13, 39:21-25 to 40:1.)  Thus, for these reasons, this defense must be stricken.

9.   <u>Affirmative Defense No. 16 (Answer, ¶ 40)</u>

Plaintiff seeks to strike Defendant's affirmative defense set forth in paragraph forty of his Answer, which states "Plaintiff has not acted in good faith since the beginning of their attempts to cease individuals from allegedly intercepting DirecTV's programming illegally and have alleged that Defendant has committed a crime with no evidence, proof, or knowledge that Defendant illegally intercepted DirecTV's programming or has attempted to illegally intercept DirecTV's programming."  (Answer, ¶ 40.)  Plaintiff, however, has alleged statutory violations for which it may seek civil damages and has produced

11

authenticated records evidencing Defendant's alleged purchase of
a pirate access device.  DirecTV has thus established a good
faith basis for bringing its Complaint and this Court will strike
this affirmative defense as well.

    10.  <u>Affirmative Defense No. 17 (Answer, ¶ 41)</u>

    Defendant alleges that "Plaintiff has attempted to extort
and coerce unfair settlement from Defendant and other individuals
that have and have not engaged in any illegal interception of
DirecTV's programming."  (Answer, ¶ 41.)  New Jersey, however,
does not recognize a civil cause of action for theft by
extortion.  <u>Dello Russo M.D. v. Nagel</u>, 817 A.2d 426, 434 (N.J.
Super. Ct. App. Div. 2003).  Even if Defendant were to maintain
that DirecTV attempted to attain an unfair settlement by
extortion in violation of New Jersey criminal law, he is unable
to allege a necessary element of that crime, namely that DirecTV
purposefully and unlawfully obtained the property of another by
extortion.  DirecTV has not obtained any property from Defendant
here.  Thus, this defense will be stricken as legally
insufficient.

    11.  <u>Affirmative Defense No. 21 (Answer, ¶ 44)</u>

    Defendant contends in paragraph forty-four that DirecTV
violated 18 U.S.C. § 1962, otherwise known as the Racketeer
Influenced and Corrupt Organizations Act ("RICO").  (Answer, ¶
44.)  Defendant, however, lacks standing to bring a defense under

RICO because he has alleged no cognizable injury and further fails to state a claim because he alleges no activities that amount to a pattern of racketeering.  To have standing under RICO, there must be a violation of § 1962 and the complainant must have suffered a cognizable injury to his business or property caused by the violation.  See Sedima S.P.R.L. v. Imrex, 473 U.S. 479, 496-97 (1985); Rehkop v. Berwick, 95 F.3d 285, 288-89 (3d Cir. 1996).  Defendant has alleged no such injury.

In order to constitute a pattern of racketeering activity, a defendant must engage in at least two predicate acts of racketeering as set forth in § 1961(1).  Defendant alleges that DirecTV has violated RICO "via its 'End User' demand and litigation campaign."  (Answer, ¶ 43.)  In his deposition, Defendant stated that DirecTV has engaged in extortion and that is the factual basis for this defense.  (Romantini Dep. 29:18-24.)  However, the RICO statute does not contemplate that asserting a potential legal cause of action or settling potential or existing litigation could be construed as constituting a predicate act.  See e.g., DirecTV, Inc. v. Milliman, 2003 WL 23892683 (E.D. Mich. Aug. 26, 2003) (dismissing RICO counterclaim because threat of litigation does not amount to RICO extortion).

Defendant's RICO defense further fails because he has suffered no injury to his property or business.  With respect to any alleged violation of § 1962(b), the complainant must set

forth an injury that resulted from both the requisite predicate acts and the violator's acquisition or control of an enterprise that affects interstate commerce.  See Casper v. Paine Webber Group, Inc., 787 F. Supp. 1480, 1494 (D.N.J. 1992).  To that end, the complainant must allege a specific nexus between control of the enterprise and any alleged racketeering activity.  See Lightning Lube v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).

Defendant cannot avail himself of a defense under § 1962(b) because DirecTV has not acquired or maintained control of an enterprise that is engaged in interstate commerce, through a pattern of racketeering activity.  See Casper, 787 F. Supp. at 1494.  In order for this acquisition to take place, the alleged violator must assume control or acquire the entity through the asserted pattern of racketeering activity.  See Lightning Lube, 4 F.3d at 1190; Casper, 787 F. Supp. at 1494.  Defendant has not alleged that he owned or operated an enterprise over which DirecTV assumed control.  Nor has Defendant alleged that DirecTV assumed control over himself or any other entity.

Moreover, Defendant's affirmative defense fails to allege a specific nexus between control of the enterprise and any alleged racketeering activity, which is required to establish a violation of § 1962(b).  See Lightning Lube, 4 F.3d at 1191.  Without defining this nexus between the activity and the enterprise, a claim fails as a matter of law.  Kehr Packages, Inc. v. Fidelcor,

14

<u>Inc.</u>, 926 F.2d 1406, 1411 (3d Cir. 1991) (dismissing a complaint for violation of § 1962(b) where the complaint did not allege a nexus between control of the enterprise and the alleged racketeering activity).  For these reasons, this Court will strike Defendant's affirmative defense as legally insufficient.

    12.  <u>Affirmative Defense No. 21 (Answer, ¶ 45)</u>

    In paragraph forty-five of his Answer, Defendant states that "Plaintiff has filed a malicious and frivolous lawsuit upon Defendant."  (Answer, ¶ 45.)  Defendant's contention would be proper as a motion pursuant to Fed. R. Civ. P. 11, not as an affirmative defense.  However, this Court notes that numerous courts in this District, as well as in others, have ruled that DirecTV may maintain a cause of action under the statutes set forth in the Complaint.  Therefore, this defense will be stricken.

    13.  <u>Affirmative Defenses Nos. 18, 19, 22 and 23 (Answer, ¶¶ 42-43, 46-47)</u>

    In paragraphs forty-two, forty-three, forty-six and forty-seven of his Answer, Defendant asserts a number of tort claims[1] as affirmative defenses against DirecTV's instant action. (Answer, ¶¶ 42-43, 46-47.)  The right of access to the courts is

---

[1]Specifically, Defendant alleges that DirecTV has defamed and irresponsibly inflicted emotional distress upon him, (Answer, ¶ 42), defrauded and misrepresented him, (Answer, ¶ 43), practiced unfair competition and restraint of trade, (Answer, ¶ 46), and practiced civil conspiracy against him.  (Answer, ¶ 47).

one aspect of the right of petition protected by the First
Amendment.  See California Motor Transport Co. v. Trucking
Unlimited, 404 U.S. 508, 510 (1972).  The Noerr-Pennington
doctrine immunizes litigation and other petitioning conduct from
liability.  See Professional Real Estate Investors, Inc. v.
Columbia Pictures Indus., 508 U.S. 49, 51 (1993).

     In Professional Real Estate Investors, Inc., the Supreme
Court held that the Noerr-Pennington doctrine immunizes the
filing of a lawsuit, regardless of the purpose of the lawsuit, so
long as the litigation is not a "sham."  Id. at 51.  To be a
"sham," a lawsuit must be objectively baseless.  Id. at 60.  A
lawsuit is objectively baseless only if "no reasonable litigant
could realistically expect success on the merits."  Id.  Thus, if
the party filing suit has a reasonable belief that its claims are
valid, the suit is immunized under the Noerr-Pennington doctrine.
See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 122-23 (3d
Cir. 1999).

     Although this doctrine first arose in the anti-trust
context, courts have applied its principles more generally as
well.  See e.g., NAACP v. Claiborne Hardware Co., 458 U.S. 886,
913-15 (1982) (holding First Amendment immunized non-violent
petitioning conduct and applying Noerr-Pennington); Brownsville
Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d
Cir. 1988) (finding Noerr-Pennington doctrine immunized

16

defendants from tort liability for petitioning government to shut down nursing home).  Moreover, the Third Circuit recognizes that the <u>Noerr-Pennington</u> doctrine applies in a case such as this to bar allegations that a plaintiff has committed tortious acts by threatening to bring suit and subsequently doing so.  <u>Herr v. Pequa Twp.</u>, 274 F.3d 109, 117-19 (3d Cir. 2001) (recognizing that <u>Noerr-Pennington</u> doctrine applies to state law tort claims).

Here, nothing supports an argument that DirecTV's lawsuit and the allegations contained therein are a "sham," and that no reasonable litigant could realistically expect to succeed on the merits.  DirecTV has stated a cognizable cause of action and these defenses will therefore be stricken.

For these reasons, Plaintiff's motion to strike these affirmative defenses set forth in Defendant's Answer will be granted in its entirety.

B.   <u>Defendant Romantini's Motion to Dismiss Count III</u>

Defendant Romantini has filed a motion to dismiss Count III of DirecTV's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

1.   <u>Motion to Dismiss Standard of Review</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A district court

must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F. Supp. 226, 230 (D.N.J. 1990).  The question before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter,

18

are taken into consideration.  Chester County Intermediate Unit
v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

    2.  Count III of Plaintiff's Complaint

Defendant Romantini brings this motion to dismiss Count III
of DirecTV's Complaint against him, which alleges that Defendant
violated 18 U.S.C. § 2512(1)(b) by possessing an illegal pirate
device.  Defendant's motion is based on his argument that 18
U.S.C. § 2520(a) does not create a private right of action
against a person who possesses a device in violation of §
2512(1)(b).

DirecTV argues that its civil claim for relief, based on
Defendant's alleged violation of 18 U.S.C. § 2512(1)(b), is
authorized by 18 U.S.C. § 2520(a), which states:

> Except as provided in section (2)(a)(ii), any
> person whose wire, oral, or electronic
> communication is intercepted, disclosed, or
> intentionally used in violation of this
> chapter may in a civil action recover from
> the person or entity, other than the United
> States, which engaged in that violation such
> relief as may be appropriate.

18 U.S.C. § 2520(a).  Such relief includes equitable relief,
damages, reasonable attorneys' fees and other litigation costs.
18 U.S.C. § 2520(b).

Under 18 U.S.C. § 2512(1)(b), Congress has criminalized
certain conduct as a felony, where "any person who intentionally
manufactures, assembles, possesses, or sells any electronic,
mechanical, or other device, knowing or having reason to know

that the design of such device renders it primarily useful for the purpose of surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce . . . ." 18 U.S.C. § 2512(1)(b). This statute provides that such conduct is punishable by imprisonment up to five years, or a fine, or both. Id. This statute does not mention any civil remedy. Id. The sole mention of a private civil remedy lies in § 2520, supra, and it is to that statute that this Court now turns.

As DirecTV strenuously argues, this Court previously denied a motion to dismiss, which raised this exact issue, made by another defendant in this case, Gary Weikel, on April 29, 2004. At that time, this Court found that the law suggested the availability of a private cause of action under § 2512(1)(b) to plaintiffs such as DirecTV. Since this Court's decision, however, the legal landscape has changed significantly.[2]

On June 15, 2004, the United States Court of Appeals for the Eleventh Circuit held that 18 U.S.C. § 2520(a) does not create a

---

[2]This Court's April 29, 2004 decision, denying Weikel's motion to dismiss the § 2512(b) cause of action forms the law of the case. The law of the case doctrine holds that a legal question, once decided in a case, is not revisited absent intervening precedent or a clear conviction that the prior decision was erroneous. Southco, Inc. v. Kanebridge Corp., 324 F.3d 190, 194 (3d Cir. 2003). Under that standard, the Court re-examines its holding in light of DirecTV, Inc. v. Treworgy, 373 F.3d 1124 (11th Cir. 2004), as discussed in the text below.

private right of action under § 2512(1)(b) against persons in possession of pirate access devices in <u>DirecTV, Inc. v. Treworgy</u>, 373 F.3d 1124 (11th Cir. 2004).  The Eleventh Circuit determined that civil recovery under § 2520(a) may be had for violations of the chapter, but only when there is a violation of 18 U.S.C. § 2511.  Relying on the plain language of § 2520(a), the Eleventh Circuit held that §2520(a) does not create a private right of action against a person who possesses a device in violation of § 2512(1)(b).  <u>Treworgy</u> thus holds that one may recover damages only where there are "interceptions, disclosures, and uses of electronic communications," all of which are within the ambit of § 2511, but not necessarily with § 2512(1)(b).  <u>Treworgy</u>, 373 F.3d at 1127.  The Eleventh Circuit explained that this holding is consistent with the purpose of § 2520, which was crafted to afford relief to those actually injured or threatened with injury.  Mere possession of a pirating device does not injure DirecTV, the Eleventh Circuit found.  "Possession of a pirate access device alone, although a criminal offense, creates nothing more than conjectural or hypothetical harm to [DirecTV]."  <u>Id</u>. at 1127.  At present, the Eleventh Circuit is the first and only

court of appeals to have addressed this issue[3]; the Third Circuit
has not yet spoken.

In light of this ruling, this Court has occasion to
reconsider its earlier position on the subject and now finds the
Eleventh Circuit's reasoning to be persuasive.  In addition to
the reasoning set forth by the Eleventh Circuit, with which this
Court expresses its agreement, the Court notes further that 18
U.S.C. § 2512(1)(b) establishes a criminal violation.  It is
almost always the case that no private right of action is to be
inferred from a criminal statute alone.  See Central Bank of
Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164,
190 (1994) (discussing Cort v. Ash, 422 U.S. 66, 80 (1975)).

Finally, the Court notes that DirecTV seeks damages for
violations of § 2511 and § 2512.  Nothing limits the clear
private right of action afforded to DirecTV under § 2520 for
violations of § 2511, which targets arguably more serious
misconduct than mere private possession of a device under § 2512.
It seems plain that Congress criminalized possession of such
interception devices, but it provided for a private cause of
action on behalf of parties aggrieved by actual interception or
intentional use of the communication.  By placing these limits on

---

[3]While the Fourth Circuit Court of Appeals held in Flowers
v. Tandy, 773 F.2d 885 (4th Cir. 1985) that § 2520 did not confer
a private cause of action against a defendant who manufactured or
sold a device in violation of § 2512(1)(b), Flowers was decided
prior to the 1986 amendments to the Wiretap Act.

§ 2520, Congress did not intend to create a private federal court remedy for mere possession of such devices.  In light of this, and because use is easily implied from possession of an illegal device for which there is no other known purpose, Plaintiff's quest for a statutory remedy is better served by seeking damages to redress the § 2511 violation.  This Court's ruling today simply does not, as DirecTV would have this Court believe, frustrate the ability of targeted entities, like DirecTV, to protect their business.

Thus, this Court joins the growing number of district courts in the Third Circuit in concluding that 18 U.S.C. § 2520(a) does not provide a private cause of action for violations of 18 U.S.C. § 2512(1)(b).[4]  See e.g., DirecTV, Inc. v. Turzo, 03-CV-5612 (RBK) (D.N.J. Opinion September 16, 2004); DirecTV, Inc. v. DeCroce, 332 F. Supp. 2d 715 (D.N.J. 2004); DirecTV, Inc. v.

---

[4]This Court's doing so does not materially affect any of the other Defendants in this case.  While Defendant Weikel's motion to dismiss on this same ground was denied on April 29, 2004, before the Eleventh Circuit's decision in Treworgy, Mr. Weikel entered into a Stipulation and Order of Dismissal with Prejudice with Plaintiff on February 10, 2005.  In addition, this action was stayed as to Defendant Lopez on March 4, 2004.  Finally, DirecTV moved for the entry of default judgment against Defendant Colbert, seeking damages for a statutory violation of § 2511 or § 2512, which this Court granted on March 30, 2005.  As DirecTV argued for damages in the alternative, and this Court found Plaintiff entitled to such damages under § 2511, the Court did not address the unresolved issue of DirecTV's asserted cause of action pursuant to § 2512(1)(b) at that time.  See March 30, 2005, Opinion and Order.

<u>Barker</u>, 2004 WL 1729484 (E.D. Pa. July 28, 2004).[5]  Therefore,
Defendant Romantini's motion to dismiss Count III will be
granted.

C.   <u>Defendant Romantini's Motion for Summary Judgment</u>

Defendant Romantini has also filed a motion for summary
judgment on the remainder of Plaintiff's Complaint against him.

1.   <u>Motion for Summary Judgment Standard of Review</u>

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the
evidence is such that a reasonable jury could return a verdict
for the non-moving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 248 (1986).  A fact is "material" only if it might
affect the outcome of the suit under the applicable rule of law.
<u>Id</u>.  Disputes over irrelevant or unnecessary facts will not
preclude a grant of summary judgment.   <u>Id</u>.

In deciding whether there is a disputed issue of material
fact, the court must view the evidence in favor of the non-moving
party by extending any reasonable favorable inference to that

---

[5]While DirecTV argues that "an overwhelming majority of the
cases in the District of New Jersey in which this issue has been
determined have ruled that a civil cause of action may be brought
for violations of § 2512," (Pl.'s Brief at p. 11, n.3), this
Court notes that almost all of those cases were decided pre-
<u>Treworgy</u>.

party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991)(reviewing district court's grant of summary judgment in a trademark action); Lucent Info. Manage. v. Lucent Tech., 986 F. Supp. 253, 257 (D.N.J. 1997)(granting summary judgment in favor of telecommunications provider in trademark action), aff'd, 186 F.3d 311 (3d Cir. 1999); Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990). However, where the nonmoving party bears the burden of persuasion at trial, as plaintiff does in the present case, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that

25

there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e). Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50. Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

2.   47 U.S.C. § 605

Defendant argues that Plaintiff DirecTV is not entitled to relief under 47 U.S.C. § 605, as Plaintiff, first, is not a "person aggrieved" and, second, is unable to offer evidence of actual interception of communication.

This Court has previously held, however, that DirecTV's Complaint states a cognizable claim under 47 U.S.C. § 605. See DirecTV, Inc. v. Wiekel, et al., 03-CV-5300 (JBS) (D.N.J. April 29, 2004). Moreover, under the Communications Act, any person aggrieved by violations of § 605(a) may bring a cause of action against such violators. 47 U.S.C. § 605(e)(2). Violations of § 605(a) include, inter alia, receiving and/or assisting others in

26

receiving satellite transmissions of television programming
without authorization.  See TKR Cable Co. v. Cable City Corp.,
267 F.3d 196, 200 (3d Cir. 2001).  The Third Circuit's decision
in TKR Cable, as this Court has previously held, supports
DirecTV's claims against Defendant arising from his alleged
interception of satellite signals because, as recognized in TKR
Cable, liability under § 605 applies to "pirates who directly
intercept airborne transmissions."  Id. at 200.

     In addition, the Communications Act provides that the Court
"may grant temporary and final injunctions on such terms as it
may deem reasonable to prevent or restrain violations of
subsection (a) of [the Communications Act]."  See 47 U.S.C. §
605(e)(3)(B)(I).  Any interception by Defendant of DirecTV's
satellite programming would therefore clearly entitle DirecTV to
pursue claims under the Federal Communications Act and to seek an
injunction prohibiting Defendant from committing further
violations.

     DirecTV has alleged in its Complaint that Defendant engaged
in several forms of pirating activities in violation of §
605(e)(4), including modifying, assembling or importing a pirate
access device.  Pursuant to the statute, DirecTV may bring a
civil cause of action against a person who "manufactures,
assembles, modifies, imports, exports, sells or distributes any
electronic, mechanical or other device or equipment knowing or

27

having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of . . . direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section . . . ." 47 U.S.C. § 605(e)(4). Thus, given the plain language of this statute, DirecTV may maintain a claim under § 605(e)(4) as well.

Defendant next contends that he is entitled to summary judgment because DirecTV has no evidence that Defendant has intercepted any communications that it had proprietary interests in or that he has engaged in manufacturing, distributing or selling equipment that received satellite communications. DirecTV, however, has offered a plethora of evidence to support its claims.

DirecTV submits, with its opposition to Defendant's motion, documents containing data relating to Thomas Romantini's alleged purchase of a bootloader and emulator from Smart Card Solutions, Inc., d/b/a DDS-Pro, a dealer of such devices. (Pl.'s Exs. A & F.) According to these records, on September 4, 2001, an individual named T. Romantini purchased $111.98 worth of illegal equipment. (Pl.'s Ex. A.) The devices purchased and shipped to him were a Boot Loader Board and Emulator, which DirecTV maintains are designed for the theft of DirecTV's satellite television programming. (Pl.'s Ex. F.) The record also indicates that T. Romantini had the devices billed and shipped to

28

942 Ashburn Way, Swedesboro, New Jersey 08085.  (Pl.'s Exs. A &
F.)  Defendant admitted during his deposition that he lived at
942 Ashburn Way, Swedesboro, New Jersey 08085 at the time of this
purchase.  (Romantini Dep. 8:1-13.)

    The purchase record further states that the email address
for the individual ordering the devices was
trome@bellatlantic.net.  (Pl.'s Ex. A.)  Defendant admitted,
during his deposition, that he was the registered user of that
email address at the time of the purchase in 2001.  (Romantini
Dep. 6:23-25 to 7:1-18.)

    With regard to the delivery of the device, DirecTV obtained
and produced records from the United Parcel Service ("UPS"),
indicating that it delivered the devices to Romantini, in
Swedesboro, New Jersey 08085.  (Pl.'s Ex. F.)  Plaintiff has also
provided a declaration from the Custodian of Records from UPS,
attesting to the chain of custody of this record.  (Pl.'s Ex. D &
F.)

    Finally, DirecTV has provided information from PayPal, Inc.,
a company which enables any individual or business with an email
address to securely, easily and quickly send and receive payments
online.  Payments are billed directly to the buyer's bank account
or credit card.  DirecTV offers information from the PayPal
account maintained by Defendant and his wife, which shows that
the account is linked to Defendant Romantini's email address,

trome@bellatlantic.net.  (Pl.'s Ex. G.)  In addition, the Credit
Cards section of the PayPal records lists cards belonging to
Thomas Romantini and his wife; indeed, one of the identified
credit cards appears to match the card used for the purchase in
question and states that the card belongs to Thomas Romantini.

On December 23, 2004, DirecTV issued a subpoena to Commerce
Bank, the issuer of this credit card, for information concerning
the account number indicated on the purchase records and PayPal
records.  On February 3, 2005, DirecTV received information about
the VISA account maintained by Defendant and his wife.  (Pl.'s
Supplemental Ex. A.)  These records confirm that on September 4,
2001, Defendant had a debit amount for $111.98 for a purchase
from Smart Cards Solutions.  The charge for this purchase was
never reversed, as if a mistake had been made in charging
Romantini's credit card.  Smart Card Solutions was a corporation
registered in the State of Indiana, doing business as DSS-Pro;
DSS-Pro and Smart Card Solutions are the same entity.  (Pl.'s
Supplemental Exs. B & C.)

From this circumstantial evidence of possession, DirecTV can
argue actual use and unauthorized interception of its satellite
signals.  Indeed, use is easily implied from mere possession of
such a device, given the nature of the instrument and its sole
function.  Defendant, however, denies ever receiving such a
device.  Thus, a reasonable factfinder could conclude that

Defendant Romantini possessed and used the pirate device, and genuine disputes of material fact exist, rendering an entry of summary judgment by the Court in favor of the Defendant inappropriate.

     3.   <u>18 U.S.C. § 2511(1)(a)</u>

Defendant next argues that summary judgment should be entered in his favor on DirecTV's claim under 18 U.S.C. § 2511(1)(a), arguing that this claim must fail because DirecTV again lacks sufficient evidence that Defendant actually intercepted electronic communications.

As a preliminary matter, DirecTV has a civil remedy for violations of § 2511(1)(a), which addresses one who "intentionally intercepts, endeavors to intercept, or procures another person" to do so.  18 U.S.C. § 2511(1)(a).  Civil claims for relief based on violations of 18 U.S.C. § 2511(1)(a) are authorized by 18 U.S.C. § 2520(a), which states:

> Except as provided in section 2511(2)(a)(ii),
> any person whose wire, oral, or electronic
> communication is intercepted, disclosed, or
> intentionally used in violation of this
> chapter may in a civil action recover from
> the person or entity, other than the United
> States, which engaged in that violation such
> relief as may be appropriate.

18 U.S.C. § 2520(a).  Section 2520(a) thus creates a private right of action where an individual intentionally intercepts or endeavors to intercept satellite transmissions in violation of the Electronic Communications Privacy Act.  Indeed, this Court

31

has repeatedly recognized that DirecTV has stated a civil cause of action for violations of § 2511.  See e.g., DirecTV, Inc. v. Gallagher, 03-CV-2474 (JBS) (D.N.J. April 29, 2004); DirecTV, Inc. v. Weikel, 03-CV-5300 (JBS) (D.N.J. April 29, 2004).

Defendant's arguments that summary judgment should be entered because DirecTV has no evidence of interception must fail here as well.  As illustrated above, DirecTV has produced sufficient circumstantial evidence of interception to prevent the entry of summary judgment.  Plaintiff has offered authenticated purchased records and UPS records, indicating that the pirate access devices at issue were shipped to Defendant's home address. (Pl.'s Ex. D & F.)  Moreover, because Defendant Romantini disputes that he purchased or received the devices at issues, it remains disputed whether Romantini purchased or received such a device intentionally to intercept, endeavor to intercept or to procure any other person to intercept or endeavor to intercept an electronic communication.  Thus, Defendant's motion for summary judgment on this claim must fail as well.

### III.  <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's motion to strike certain affirmative defenses of Defendant Romantini's Answer will be granted and this Court strikes the affirmative defenses contained in paragraphs 26, 28, 30-33, and 39-47.  In addition, Defendant's motion to dismiss Count III of the Complaint will be granted and Defendant's motion for summary judgment will be denied.  The accompanying Order is entered.


**<u>May 25, 2005</u>**                    **<u>s/ Jerome B. Simandle</u>**
DATE                             JEROME B. SIMANDLE
                                 United States District Judge

33